Good morning, we are ready for our next case, which is case number 4-15-09-02. The people of the state of Illinois v. Marcus Burke. And for the appellant, we have Ms. Shepard. And for the appellee, we have Ms. Shaver. Is that correct? Yes, ma'am. Thank you. You may proceed, counsel. May it please the court. Counsel. This case presents a question of statutory construction. In order to receive the credit against the 160-day speedy trial term provided by Speedy Trial Act Subsection B, what type of demand must a defendant make while in custody and identify in the written speedy trial demand he files after his release on bail over cognizance? Although no published decision has addressed that specific question of the construction of Subsection B's credit provision, cases construing the Act as well as the Act's plain language make clear that the in-custody demand required by Subsection B's credit provision must be a demand for a speedy trial. That is so for the following reasons. Courts construe the word demand in both Subsections A and B of the Act as requiring a demand for speedy trial. The Supreme Court in Phipps and Cordell and the appellate court in Pico have clearly held that a demand under the Speedy Trial Act must be a demand for a speedy trial and that a simple demand for trial is not enough. Also, Subsection B requires a defendant to include in his written speedy trial demand the date of any prior demand made under this provision while the defendant was in custody. It thus must be that the Act thus spells out that the prior in-custody demand must be a demand made under the Speedy Trial Act. It thus must be a demand for speedy trial. The word speedy, in fact, does not appear in the Speedy Trial Act. The word demand in the Act, nonetheless, has consistently been construed as it must be construed to refer to a demand for a speedy trial. There is no basis for finding that the legislature's use of the word demand in Subsection B's credit provision means anything other than what it means in the balance of the statute, the demand for a speedy trial. Here contrary to the statutory language and the Supreme Court and appellate court authority that is construing it, defendants argued, and the trial court agreed, that they should be given credit against the 160-day speedy trial term from the time of their simple demand for jury trial at the conclusion of the preliminary hearing in this case. That demand, however, was not a speedy trial demand. It did not... But isn't it automatic? I mean, when you're in custody, and I realize we're looking at B, but just to back up a little bit, when you're in custody, you have that right, you don't have to make any type of demand as long as you don't occasion delay. So I don't understand why you would assert that there has to be some type of speedy trial demand when a person is in custody, because, of course, we're talking about what credit they get for that if they are released. We're asserting that, Your Honor, because Subsection B requires a demand made while in custody in order to get credit against the 160-day term from the time that such a demand is made. And in order to construe that language, we have to say, well, what is the demand while in custody? And that was what was at issue in the trial court. That's what we're deciding, what's at issue on appeal here. And throughout the Act, demand for trial has been construed as meaning the demand for a speedy trial. But do you agree that a person who's in custody, they don't have to make a demand for a speedy trial? They don't have to make a demand for a speedy trial within custody in order to start the 120-day clock. They do have to make a demand while they're in custody under two circumstances. One is, as stated in Subsection A, to avoid delay being attributable to them. And the other is to get credit against the 160-day speedy trial term for the time, their time in custody since the making of that demand. The trial court granted the defendant's motion to dismiss, and the state is the appellant here? Yes, Your Honor. So you're seeking to have us reverse the trial court's order, and in doing so, you're making arguments never presented to the trial court by the state. We, as you know, are, the phrase I like to use, it's perhaps as written in flashing neon across my forehead is, we're never going to reverse a trial judge based on an argument the trial judge never heard. Never is too strong a word, but it's pretty much accurate. Why shouldn't that standard apply here? Because, Your Honor, plain error, like forfeiture, does apply to the state. And the cases that we cited in our brief apply that even in the speedy trial context. So it's true, as applied to defendants, there are arguments that they don't make in the trial court. This court does review those arguments if they establish plain error. And so we're arguing that under Rule 615A, that plain error does apply. And it's important, I want to make this point as well, defendants argue estoppel, and plain error, of course, does apply to forfeited arguments. The only argument that might be subject to estoppel is one that doesn't apply to the statutory construction argument. So here, this case involves an issue of statutory construction. It involves an issue of first impression, which the Supreme Court in, what was that case? The Supreme Court in the case that Ice Hoffman applied, addressed an argument that wasn't made in the trial court without invoking the plain error doctrine, because it involved an issue of first impression. And here, this is something that has not been, the subsection B credit provision has not been construed in any published decision. And clearly the state and defendants and the parties and everyone needs guidance as to how that should be applied. So, and the state does have a substantial right that's been recognized in cases including alluded to, it's been alluded to in the Supreme Court's, U.S. Supreme Court's decision in bringing charges against defendants and bringing them to trial with those charges. So to protect that substantial right, and because this is an issue of statutory construction, it's an issue of first impression, excuse me, and also as recognized in Knopp, which is one of the cases we cited in our brief too, plain error is also warranted in order to determine whether the trial court exceeded its limited authority to dismiss criminal charges prior to trial. So, and in the trial court, the prosecutor talked about the statute, talked about the cases, and didn't take a contrary position to what we're arguing on appeal, just said very honestly, this is, what does this mean? The cases don't answer this question as to this specific subsection B credit provision. So, this prosecutor talked about this and went so far as to kind of explore the case law and the statute, didn't get as far as we did on appeal in answering that question, what does it mean under the Speedy Trial Act, subsection B, demand for trial? Well, do you agree that, excuse me, do you agree that on April 30, 2015, the defendants made their initial demand for trial? They were still in custody, but they made a demand for trial? They made a demand for jury trial, but that was not a demand for trial under the Speedy Trial Act. Because everywhere in the Speedy Trial Act, there is a reference to, when it refers to a demand for trial, that means a demand for a speedy trial. Well, aren't there cases that say if a defendant answers ready for trial, that's not a demand, but if he demands trial, the inference is it's a speedy trial request? The cases are contrary to that, Your Honor. Cordell, Pico, what's the other one? Phipps, I think it was. And there are a lot of cases that are cited in those decisions that say, no, if you say, even I'm ready for trial right now, I demand a jury trial, I demand a trial, that's not enough. You have to say, I demand a speedy trial. And defendants, as you know, they make those demands all the time at the beginning of trial. I demand a jury trial. That's not enough under the Speedy Trial Act. Okay. Do you have a case that says that?  Phipps, Cordell, Pico, and the cases that they cite. So if a defendant says, I'm ready for trial, I object to the state's request for continuance, I'm demanding trial, that's not enough for a speedy trial? That's not enough under cases that have construed that provision that likewise say, when you're objecting to trial under the speedy trial, including when you're objecting to delay under Subsection A, you have to demand a speedy trial. So these are arguments that were addressed below. They're not exactly the same as what we argued below. They didn't go as far as saying, well, this is what the answer is. They did talk about, these are the cases. This is, the prosecutor did recognize that there were cases which, as the courts do in Pico and Phipps and Cordell, talk about, well, do we need any magic words? No, the only magic word you need is speedy. You have to say that you want a speedy trial. And to rule otherwise, so this court reaches the issue, which it should, because it is to rule otherwise, it would be contrary to those decisions and the language of the Act. And again, the language of the Act, every reference in the Act to demand has always been construed as meaning a demand for a speedy trial. And it has to. Speedy doesn't appear anywhere in the Act. And again, that provision handily in Subsection B, any demand for trial made under the Subsection B shall be in writing. And in the case of a defendant non-custody, the demand for trial shall include the date of any prior demand made under this provision. So that makes clear that it has to be made under this provision, under the Speedy Trial Act. Therefore, it has to be a demand for a speedy trial. And as far as, I don't know if the court would like me to talk more about estoppel, the only argument that we may be estopped from making is something that has to do with delay in Issue 2. And that is not relevant to statutory obstruction arguments that we make in Issue 1. It has to do with whether or not the defendant made the objection that is provided for in Subsection A to delay by making a speedy trial demand. And we argued that defendants didn't do that. They never made a demand for a speedy trial while they were in custody. So even if this court found that we were stopped from making the delay argument, that would be irrelevant to the statutory obstruction arguments that we make in Issue 1. So at this point, I guess I would simply ask that you reverse and remand, and I will answer any arguments that defendants make in their argument and my rebuttal. Thank you, Counsel. Counsel, you may proceed. May it please the Court? Counsel. Good morning. On behalf of the Office of the State Appellate Defender, my name is Mariah Shaver, and I represent Mr. Marcus Burke and Mr. Uri Lillard. Before I get started, I wanted to bring to the Court's attention an error in my brief that I noticed while I was preparing for this argument. On page 9 of my brief, at the top of the page, the last sentence, in the final paragraph at the top of the page above Subsection B, I indicate in the brief that there were 21 days that passed from April 9th through April 30th as to Mr. Burke. That should be 22 days, and that there were 10 days as to Mr. Lillard between April 20th and April 30th. That should be 11 days. They're both one day short. I apologize for that. It should not impact the accountants anywhere else, and I don't believe... It explains why you're not an accountant. Yes, Your Honor. I did not go to law school because of the math requirements. I do apologize for any confusion that may have caused. Thank you, Counsel. The State has multiple hurdles to overcome in this case, the first of which is that it raises arguments for the first time on appeal that it did not raise before the trial court that denied my clients of the opportunity to respond to those arguments, denied the trial court of the opportunity to rule on those issues, and most importantly, it denies this Court of a complete record to review on appeal. Even if the State can overcome that hurdle, it cannot surmount the remaining obstacles related to the merits of this case because Mr. Burke and Mr. Lillard were entitled to credit for the speedy trial term for the time they spent in custody, and the right to a speedy trial was violated. The burden is on the State to bring a case to trial within a speedy trial term. It was due to the prosecutor's mistake in this case that that did not happen. It was not any fault of Marcus or Yuri's. It would be unfair to allow the State to use narrow technical interpretations of the Speedy Trial Act as a sword to poke holes in that statutory burden rather than as a shield to protect it from defendants who are covertly trying to avoid prosecution. Parties in the trial court in this case were all following the local customs and practices of how a defendant invokes their right to a speedy trial in Vermillion County. It would be fundamentally unfair to now, for the first time on appeal, say that that mutual understanding was not valid. I'd like to first address... What mutual understanding was that? Mutual understanding that when defense counsel answered ready for trial, that that was understood by everybody in the room to be an objection for purposes of subsection A under the objection or demand being required, that that was considered an objection to any further delay. Can I ask you a question? Yes, ma'am. In your brief at page 10, you say the State cites no authority requiring a defendant to explicitly demand a speedy trial to invoke the protections of the Speedy Trial Act, nor has the legislature written such a requirement into the statute. Now, Ms. Shepherd, during her argument, said Cordell and Pico and other cases cited there do require that. So, tell me about those cases. Yes, Your Honor. Regarding Pico, Cordell, and I believe Fifth's is the other case Ms. Shepherd cites, in those cases, there's nothing in the language of those cases that says that a speedy trial must be demanded. The important part to take away from those cases are that it needs to be clear to everyone in the room. The state needs to be on notice that a speedy trial is being demanded. In Pico specifically, that's the case that talks about there are no magic words that are required. Ms. Shepherd's position is that speedy is the magic word if there is one. I would suggest that demand is the important word, because that's the word that triggers to everybody in the room, particularly the state who deserves to be on notice, that we are demanding a speedy trial. In this case, when counsel on April 30th asked that the record reflect their demand for a jury trial. A jury trial is an automatic right. I have a constitutional right to a jury trial as a defendant. Everybody would. So, it was important that she said she's demanding trial. That's what the language of the statute requires, is a written or oral demand for trial. That's exactly what defense counsel did here, is demanded a trial. It was inferred by everyone in the room that that was a demand for a speedy trial. We know that the state did infer it that way, because they made no objection to the trial court's explicit findings that delays were attributable to the state. The state made no objection on, for example, July 6th. The state made no objection to the court's construction of that. And we know from people via Moore that announcing ready for trial alone is insufficient to serve as a demand. But that statement coupled with the court's construction and with the lack of objection, that that does constitute a demand. I mean, Judge Fahey seems to, every time a defendant announces ready for trial, she attributes delay to the state if they're asking for a continuance. And I'm not sure that's correct. I know the case you're talking about that says, well, that accompanied by no objection by the state makes it that way. But some nebulous. I understand your concern, Your Honor. In this case, I don't believe that is a concern that the court needs to worry about, because in addition to making no objection to that explicit finding on the record on that court date on July 6th, where that is an issue here, we then come to the motion to dismiss hearing on October 21st, and the state at no point then argued that it was not clear. And in fact, the state explicitly conceded that there were no delays attributable to the defense in that case. So the state had two opportunities in this case to raise any concern it had about a delay being attributable to the defense, that it was not clear that there had been a speedy trial demand. It seems to me, though, that that's kind of like the practice down here in this courthouse, whether it's correct or not is another. But anyway, you're right. I mean, I know that the state conceded there was no delay attributable to the defense. And Your Honor, speaking to what does appear to be the practice in this courtroom, because everyone in the room did seem to have the same understanding of what those constructions by Judge Fahey did mean, because in particular, the state did seem to have that same understanding that when defense counsel did answer ready on July 6th, that was defense counsel objecting to the state per the practices of the local custom. And again, that may not be exactly what this court is looking for, but because everyone in the room understood that, the purpose of some of these notice requirements in the Speedy Trial Act is to make sure that the state is fully aware that the speedy trial term is running. So a defendant cannot come in on the 11th hour and say, oh no, we did mean we were demanding a trial in ambiguous language and things that are not clear. That's not what happened in this case. In this case, we know that the state's attorney was fully aware that the term was running. The state conceded that it was aware that the 120 days under subsection A was running while Marcus and Uri were in custody. When Marcus and Uri were released at the state's request on recognizance bonds, they filed written demands that they tendered in open court. There was discussion on the record of what everyone understood the implication of that written demand to have on the speedy trial term. And the state made no question that it was aware that the term was running. In this case, it's clear that they did know. The problem was that the prosecutor did not understand under subsection B that my clients were entitled to credit. That seems to be the problem. So when they tendered their demand when they were released on recognizance, that was a demand for a speedy trial within the 160-day rule. Yes, it was, Your Honor. And that demand did refer back to both the dates of arrest. There were two demands, one for each of my clients. They both referred to the dates of their respective arrests, which were different dates. And they both referred to that April 30th date of that demand for jury trials, what counsel did ask for. And if you look at that April 30th date, when they were actually tried then was past the 160 days? Yes, Your Honor, they were not actually tried. If we look from April 30th to October... She dismissed it, but I mean... Yes, when it was dismissed, that was 174 days from April 30th to October 21st. So in this case, we don't have to resolve whether or not we're going to look at the date of arrest or the date of the first demand. We can just look to the date of that first demand and we know that that's 174 days, which does exceed the 160. One other issue I did want to address. In the state's briefs, they indicate that some of these demands were premature. I just wanted to briefly address that. The April 30th demand, as the state acknowledged on page 2 of its Statement of Facts and its opening brief, counsel acknowledged the jury trial date had been scheduled for July 6th and then asked that her demand for jury trial be shown. So that was not premature, that was not before any delay had been proposed. On July 6th, that next relevant court date, counsel was aware that the state was going to be asking for continuance. There had clearly been some sort of off-record discussion. So when counsel did answer ready, which we've discussed that as the construed objection, counsel knew that the state was going to be asking for additional time. And then the third continuance in this case, the August 3rd continuance, counsel did object. The state first had indicated they were going to make a delay, they proposed that, and then counsel objected and then filed the written demands right away. So I think that there's no concern in this case that any of the demands were premature. Also, looking to Cordell, the problem with Cordell was that counsel in that case had not objected to a proposed delay that was going to move the trial outside of the 120-day term. Counsel simply requested a trial, which again, just requesting a trial doesn't affirmatively indicate to the state that I'm demanding a trial. And then when the trial date was continued to outside the 120 days, counsel in that case didn't object to that possible delay. So when we look at delay, there's objections and demands under subsection A as to, I have to make it clear that I'm not agreeing to this delay as a defense attorney. And then there's the demand that's required to trigger the term under subsection B. As we stated earlier, the magic word in this case was demand. And that was the word that was used. If there are no further questions... I don't see any at this time, counsel. Thank you, Your Honor. We ask that you affirm the trial court. Thank you. Any rebuttal? Well, initially, the state would ask, of course, that you read the state's ruling. The state did not argue that there was a premature demand. The only reference that we made to a premature demand was in describing Garrett, which talked about Garrett. That's not this case. Also, in Pipps, the Supreme Court said that the Speedy Trial Act does not mandate any magic word constituting a demand for trial, but it requires some affirmative statement in the record requesting a speedy, speedy in italics, trial. And they cite Fordell and they quote Pico. So, it's very clear. You have to make a demand for a speedy trial under the Act. That's what demand means. And so, is it your position that you have to literally say the word speedy? You do. Absolutely. And that's what the cases that support that state say the same thing. All of the arguments opposing counsel made as to delays, again, that's a red herring as to the statutory construction that relates to whether or not the, again, as we argued in subsection, or in issue two, whether or not the defendant objected as provided in subsection A to any delay so as to by making a speedy trial demand and then credit could be counted from the date of that delay. The issue here, whether or not, it has to do with whether or not, as the case turns out, whether or not defendants established, and it's their burden to establish a speedy trial violation. Talking about burdens. And they are not allowed to use the Speedy Trial Act as a sword rather than a shield. If it's addressed the situation where the those delays under 103-5A after the 120-day clock had already begun to run, and so the question is, why does that establish that the initial in-custody demand for trial under 103-B must say that it's a speedy one as opposed to saying we just demand trial? Because subsection A applies to defendants who are in custody because that provision, as the entire Speedy Trial Act has been construed, to mean that when the language in the Speedy Trial Act says demand, it means a speedy trial demand. And so when subsection B talks about a demand while in custody, it has to be a speedy trial demand. We know that supports our argument that it has to be a speedy trial demand, even though if there were no delay, the defendant still would have to make a speedy trial demand, as it says. In cases you cite on plain error, talk about how plain error might apply if, but they don't really say plain error applies to protect the states, do they? They apply plain error. They do review issues that the state, respectfully, did not make in the trial court under the plain error doctrine, and they say we're doing this because it's an issue of statutory construction. The Supreme Court, again, in Hoffman, I guess it was, said we're going to review that even just because it's an issue of first impression on an important issue, even aside from plain error. And what was that last part? Even aside from plain error. They did not apply plain error. But all the other cases did, and many of them in the Speedy Trial Act context. Also, all the argument about what the state understood and objecting to delays, again, the statute requires that in order to get credit against the 160-day term, the defendant has to make a demand while in custody. Did they make that demand? No, they did not. Because the only demand they made was for a jury trial. On April 30th at the end of the preliminary hearing, they didn't make a demand for speedy trial. The statute requires The statute's language says they have to demand trial. That's right. It doesn't say they have to demand speedy trial. That's true, Your Honor. And everywhere in the Speedy Trial Act. In fact, any time that in subsection A or B or anywhere in the Speedy Trial Act, they talk about, the statute talks about a demand for trial. So if you were to construe subsection B's reference to demand for trial as only meaning a simple demand for trial, that would mean that every other reference in the act would have to mean a demand for trial. Well, clearly it can't mean that because it's the Speedy Trial Act. And it's been construed by all these cases that of course the demand under the Speedy Trial Act has to demand a speedy trial. If you rule that a simple demand is enough, that would be contrary to the language of the act, contrary to the cases. I have one last question I'd like to ask you. The state or party that's here is forfeiting an argument. I'm sorry, I'm having a hard time hearing you. When a party is forfeiting an argument before the trial court and is now raising the argument before this court and you're arguing plain error permits this court to consider it, that's a discretionary call with this court whether we should do that. Yes, it is. Under the facts of this case, why should we exercise our discretion to forgive the forfeiture and address the matter that you have raised that wasn't raised below? Because, Your Honor, it's an issue of statutory construction subject to de novo review. It's an issue of first impression. It's an important issue which has been addressed by this court in cases that are unpublished decisions including well, has been addressed. Clearly there's guidance needed on this issue and also because the prosecutor in good faith said what is the answer and was limited by the fact that there is no case law specifically construing that subsection. Thank you, Counsel. We'll take the matter under advisement and recess. Thank you.